IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| v. ] | No. 20-CR-79-PB |
| ] | |
| RYAMOND ESTES ] | |

**SENTENCING MEMORANDUM**

Raymond Estes respectfully submits this memorandum in support of his proposed sentence of 120 months in prison, followed by five years of supervised release subject to all the conditions recommended in the probation report, and $26,000 in restitution, as recommended by that report. The proposed prison sentence of 10 years, the low end of the parties' Rule 11(c)(1)(C) plea agreement, is only one month less than the applicable the guideline sentencing range if the Court adopts the parties' joint recommendation of a two-level variance to account for the offense level enhancement for the use of a computer in the commission of the offense.

In support of this sentencing recommendation, the defense requests that the Court consider the following.

THE SENTENCING FRAMEWORK

In the advisory guidelines regime, the framework for sentencing is well-established: The Court "shall impose a sentence sufficient, but not greater than necessary," to accomplish the purposes of sentencing, considering "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"

1

"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" as well as the applicable guideline sentencing range. 18 U.S.C. §3553(a).

The applicable guideline sentencing range, is "the starting point and initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." *Id*. at 49-50.

RAYMOND ESTES' HISTORY AND CHARACTERISTICS

Raymond Estes is a fifty-six-year-old man with no prior arrest or conviction, other than for driving without a license at age twenty. PSR ¶ 51-57. He grew up in Washington State and, once he moved to New Hampshire with his wife, he continued to work in the IT field. PSR ¶ 66. He was successfully and continually employed in that field for more than twenty years. PSR ¶ 75-76.

Mr. Estes was devastated by the death of his parents when he was in his late thirties. Dr. Feldman Report ("FR"), attached, at 5; Dr. Guidry Report ("GR"), attached, at 6. In the aftermath of their deaths, he began displaying the symptoms of major depression, and was placed Wellbutrin (150 mg) at age 40. FR 5. In 2015 that dose was doubled. FR 5. Mr. Estes became increasingly depressed, and, in December of 2018, his dosage was increased to 450 mg, the highest FDA-approved dosage. FR 5. On this dosage, he became impulsive, distracted, consumed by racing and "crazy" thoughts. FR 5; GR 8.

After his arrest in June 2019, Mr. Estes was detained and asked to be tapered off the medication because of its adverse effects. PSR ¶ 11; FR 5. He experienced a dramatic improvement in his mental condition. FR 5. Currently, Mr. Estes on testing presents a largely normal psychological profile, with no data to support an anti-social personality disorder, with some features consistent with Bipolar 2 disorder. GR 11.

Mr. Estes has lost everything – his wife, his only child, his successful career. He is truly remorseful for his actions, and deeply pained by the victim impact statements submitted in this case.

NATURE AND CIRCUMSTANCES OF THE OFFENSE

Once he started working from home, Mr. Estes' viewing of adult pornography increased in frequency. GR 7-8. But his interest in viewing child pornography came much later. *Id*.

In March of 2019, an undercover FBI agent joined an online child pornography group on Live.me, a social media application, and observed a user ultimately identified as Mr. Estes posting child pornography images. PSR ¶¶ 8-10. A search of Mr. Estes' computer media pursuant to a June 2019 search warrant resulted in the discovery of a substantial amount of child pornography.

In his report, Dr. Feldman has explained that when individuals who suffer from Bipolar 2 (a disease characterized by substantial periods of depression and fewer episodes of mania or hypomania) are prescribed antidepressants, a bipolar mixed state can be triggered, characterized by racing thoughts, increased impulsiveness, and hypersexuality. FR 6-7. Mr. Estes' description of his mental state while on high doses of Wellbutrin fits this pattern. FR 7. Dr. Feldman's own research has demonstrated that when patients who are in such a state stop taking antidepressants, there are "dramatic decreases in their problematic sexual behavior." FR 6.

Considering the entirety of the available information in this case, Dr. Guidry opines as follows:

> Based on the aggregate of the data available for review, including police reports, forensic computer analysis, psychometric test results, a review of the extant literature and an examination of the empirical factors associated with the risk for sexual offense recidivism among child pornography offenders, and interviews with, and the findings from a psychopharmacological consultation of Mr. Estes, he is currently best understood as presenting a relatively low risk for recidivating with a contact sexual offense. He does not present with factors consistent with those that would indicate he is at elevated risk to re-offend by committing a contact sexual offense. If not adequately treated relative to his mood disorder, I would opine that he does present with some, but limited risk for sexual re-offense by virtue of committing an online sexual offense. In the context of adequate treatment, particularly an adequate medication, psychotherapy and oversight regimen, Mr. Estes' prognosis is positive and his risk potential will likely be significantly mitigated.

GR 14.

## THE ADVISORY GUIDELINE RANGE AND THE JOINT RECOMMENDATION FOR A TWO-LEVEL VARIANCE

The PSR calculates the total offense level at 34, corresponding to a GSR of 151-188 months.  PSR ¶ 49.  The parties have agreed, however, to ask the Court for a two-level variance effectively to undo the effect of the two-level use of a computer enhancement. PSR ¶ 5. This would reduce the offense level of 32, corresponding to a GSR of 121-151 months.

The Court should adopt the parties' joint recommendation relating to this offense level adjustment.  Courts have often adopted far more dramatic variances in child pornography cases as the applicable guideline, U.S.S.G. §2G2.2, "is fundamentally different from most and …, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what §3553 requires."  *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010); *see also United*

*States v. Stone*, 575 F.3d 83, 97(1st Cir. 2009) ("[W]e wish to express our view that [§2G2.2 is] harsher than necessary . . . [F]irst-offender sentences of this duration are usually reserved for crimes of violence and the like."); *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010) (finding district court provided compelling explanation for policy concerns and justification for sentence outside range).  *United States v. Hanson*, 561 F. Supp. 2d 1004, 1009 (E.D. Wis. 2008) (noting that, between 1994 and 2007, the mean sentence in child pornography cases increased from 36 months to 110 months as a result of "arbitrary increases by Congress slipped into other bills, often with little or no debate, resulting in direct amendments to the guidelines."); *United States v. Johnson*, 588 F. Supp. 2d 997, 1003 (S.D. Iowa 2008) ("As far as this Court can tell, these modifications [to the child pornography guideline] do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses.")

Courts in this and other districts frequently decline to apply the two-level enhancement for use of a computer. *See United States v. Tutty*, 612 F.3d 128, 132 (2d Cir. 2010) (noting that according to a 2010 Sentencing Commission report, 97.2% of offenders received an enhancement for use of a computer); *United States v. Maguire*, 436 Fed. Appx. 74, 78 (3d Cir.2011) (upholding as substantively reasonable sentence imposed the district court, which declined to apply two-level enhancement for use of a computer and five-level enhancement for number of images); *United States v. Light*, 753 F. App'x 63, 65 (2d Cir. 2018) ("Of particular concern are the enhancements meted out for offenses involving the use of a computer and for 600 or more images. We are aware of no end of the criminal justice system that is furthered by increasing the sentence for the use of a computer—an increase that applies even when the defendant does not utilize the internet in the course of committing the crime."); *United States v.*

*Griffith*, 913 F.3d 683, 686–87 (7th Cir. 2019) (stating that the district court "noted that it discounted the two-level enhancement for use of a computer in nearly all cases because it was part of every offense and so `not applying the two-level enhancement in terms of a variance would be appropriate for use of [a] computer.'").

If the Court discounts the computer enhancement, as jointly recommended by the parties, the low end of the GSR is 121. The defense recommendation is only one month below that low end.

A SUFFICIENT, BUT NOT GREATER THAN NECESSARY, SENTENCE

This Court's ultimate role is to determine the lowest sentence sufficient to accomplish the purposes of sentences. In arriving at that sentence, the Court may not treat the Guideline range as presumptively reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."). Rather, the range is "one factor among several" to be considered in imposing an appropriate sentence under 18 U.S.C. § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing. *Gall,* 552 U.S. at 49-50, 53-60. The Court's "overarching" duty is to "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *Kimbrough*; 552 U.S. at 101.

Not all of the sentencing guidelines are the product of "careful study based on extensive empirical evidence." *Gall v. United States,* 552 U.S. 38, 46 (2007). Those that are based, instead, on Congressional mandates, including §2G2.1, merit "closer review" by sentencing courts. *See Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *United States v. Rodriguez*, 527 F.3d 221,

227 (1st Cir. 2008) ("the fast-track departure scheme does not exemplify the Sentencing Commission's exercise of its characteristic institutional role. In other words, the Commission has not taken account of empirical data and national experience in formulating them. *Id.* Thus, guidelines and policy statements embodying these judgments deserve less deference than the sentencing guidelines normally attract.") (internal citations, quotation marks and brackets omitted).

Last year, the Sentencing Commission published an updated study of child pornography sentences. *See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf (last visited January 23, 2022). Among the key findings were that, "[i]n fiscal year 2019, less than one-third (30.0%) of non-production child pornography offenders received a sentence within the guideline range" and that "the majority (59.0%) of non-production child pornography offenders received a variance below the guideline range." *Id*. at 5.

The 2021 Report underscores the fact that the guideline enhancements have not evolved with the current technology and have "become so ubiquitous that they now apply in the vast majority of cases sentenced under [USSG] 2G2.2.*"* *Id*. at 4. For example, "in fiscal year 2019, over 95 per cent of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12)". *Id*. Enhancements for images depicting sadistic conduct or abuse of an infant or toddler were applied in 84% of cases and an enhancement for having 600 or more images was applied in 77.2% of cases. *Id*. (noting that non-production offenses involved median number of 4,265 images).

In this case, the low end of the parties' agreement is just one month below the low end of the GSR if the two-level variance is granted. Ten years in prison is a very lengthy period of

incarceration that sufficiently accounts for all the facts and circumstances of this case.

SUPERVISED RELEASE

A lengthy prison sentence of ten years is not the only tool that is available to this Court to further the goals of sentencing. The Court is also required to impose at least five years of supervised release.

The PSR recommends extremely strict conditions of supervision, including no internet or computer access without permission of the probation officer. The case law recognizes that, if objected to, such conditions must be scrutinized and tailored narrowly. *See United States v. Ramos*, 763 F.3d 45, 61-63 (1st Cir. 2014) (vacating condition barring defendant from using internet-enabled devices without the permission of Probation or the court as overbroad, but leaving more "narrowly tailored" conditions regarding internet monitoring in place); *United States v. Perazza-Mercado*, 553 F.3d 65, 74 (1st Cir. 2009) (vacating condition barring defendant from accessing the internet in his home as overbroad, and remanding so district court could fashion more narrowly tailored restrictions on defendant's internet use that could protect the public while also allowing "legitimate uses of the internet that might be crucial to [defendant's] rehabilitation."); *United States v. Hinkel*, 837 F.3d 111, 125-27 (1st Cir. 2016). Mr. Estes, however, is not objecting to any of those conditions. Release under such conditions means life under highly restrictive circumstances even after Mr. Estes is released from prison.

CONCLUSION

The Court should impose a sentence of 10 years in prison, 5 years of supervised released, and restitution in the amount of $26,000.

Respectfully submitted,

*/s/ Behzad Mirhashem*
Behzad Mirhashem
N.H. Bar #10031

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2022 the above document was served electronically upon all counsel of record through the CM/ECF filing system.

/s/ *Behzad Mirhashem*
Behzad Mirhashem